UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| RAYMOND ANTHONY CODY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 13-176-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Raymond Anthony Cody ("Cody" or "the Claimant") and Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 14] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Cody.

# I.

On October 20, 2010, Cody protectively filed an application for Supplemental Security Insurance ("SSI") under Title XVI of the Social Security Act ("Act").[1] [Administrative Transcript, "Tr.," at pp. 12, 136-144, 157] He alleged a disability beginning January 30, 2006.

---

1    Cody appears to have also filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act. [Tr., pp. 130-133] However, the Claimant's testimony and earnings record demonstrate that he has no previous employment. [*See* Tr., pp. 35, 155-156.] He also concedes that he had no quarters of coverage and would not be eligible for benefits under Title II. [*See* Record No. 11, p. 2] Additionally, there is no evidence that Cody appealed the denial of any Title II application. [*Id.*]

Cody claims were denied initially and upon reconsideration. Cody, along with his attorney Holly A. Daugherty, and vocational expert ("VE") Bruce S. Growick appeared before Administrative Law Judge ("ALJ") Dwight D. Wilkerson on May 7, 2012, for an administrative hearing. In a decision dated June 7, 2012, ALJ Wilkerson found that Cody was not disabled under section 1614(a)(3)(A) of the Act. [Tr., pp. 12-23]

Cody was twenty-two years old at the time of the ALJ's decision. [Tr., p. 30] He has an eleventh grade education and no past relevant work experience. [Tr., pp. 21, 38-39, 60-61, 161] Cody alleges disability due to short-term memory loss and Attention Deficit Disorder. [Tr., pp. 50-51, 161] He also testified that he experienced depression, migraine headaches, and left lower extremity pain. [Tr., pp. 14-15, 36-37, 40-42, 55-56] After reviewing the record and considering the testimony presented during the administrative hearing, the ALJ concluded that Cody suffers from the severe impairments of bipolar type II disorder, borderline intellectual functioning, attention deficit hyper activity disorder ("ADHD"), and anxiety disorder not otherwise specified. [Tr., p. 14-15]

Notwithstanding the impairments listed above, ALJ Wilkerson found that Cody retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following limitations:

> Plaintiff is able to understand and remember simple instructions and procedures; requires a brief initial learning period at any potential job; is able to sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations; is able to interact frequently and, as needed, with supervisors and peers sufficiently for task completion; should not be required to interact more than occasionally with the public; is able to adapt adequately to situational conditions and changes with

reasonable support and structure; is functionally illiterate and will be off-task no more than 10% of the time.

[Tr., p. 18]

Based on the VE's testimony, and after considering Cody's age, education, and work experience, and RFC, the ALJ determined that Cody could perform other jobs that exist in the national economy such as bench assembler, quality assurance inspector, and machine tender. [Tr., pp. 21-22]  And based on his finding that Cody could perform other work existing in significant numbers in the national economy, the ALJ concluded that Cody was not disabled. As a result, Cody was denied SSI.  [Tr., p. 22]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment

and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant

evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

### A.     Listing 12.05C

Cody argues that the ALJ erred in determining that he does not meet Listing 12.05C (the listing for mental retardation).[2] When a claimant alleges that he meets or equals a listed impairment, he must present or identify specific medical findings that satisfy all criteria of the particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925, 416.926. Conversely, "a claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

---

2      This listing was amended on August 1, 2013, changing the terminology in Listing 12.05 from "mental retardation" to "intellectual disability." See 68 Fed. Reg. 46, 499-01 (Aug. 1, 2013)). The change does not affect how a claim is evaluated under Listing 12.05. See Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 536 n.1 (6th Cir. 2014).

Listing 12.05 provides in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

Listing 12.05 is structured differently than other mental disorder listings. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. The introductory section to the mental disorders listings explains that:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraph A through D). If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

*Id.* (emphasis added).[3]

Thus, for a claimant to demonstrate that he meets the requirements of 12.05C, he must show that his impairments satisfied the diagnostic description delineated in the introductory

---

3        The diagnostic description of mental retardation contained in the introductory paragraph of Listing 12.05 is consistent with accepted medical standards which recognize that a diagnosis of mental retardation must be based on deficits in adaptive functioning as well as IQ scores. *See* Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders  42 (4th ed. Rev. 2000) (DSM-IV-TR).

paragraph of Listing 12.05 and that he had a valid IQ score of 70 or below and another severe impairment. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A), 12.05; *see also Foster*, 279 F.3d at 354-55. Put another way, to meet Listing 12.05, "a claimant must prove the following: (1) the claimant suffers from significantly subaverage general intellectual functioning, (2) the claimant suffers from deficits in adaptive functioning, (3) such deficits initially manifested during the developmental period (i.e., before age 22), and (4) one of the four criteria (A, B, C, or D) is met." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x. 868, 872 (6th Cir. 2003) (citation omitted). "The Commissioner applies a heightened evidentiary standard for presumptive disability cases under the listings . . . because the listings permit a finding of disability based solely on medical evidence, rather than a determination based on every relevant factor in a claim." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013).

Cody failed to establish that he was presumptively disabled under Listing 12.05 under the objective evidence of record. Instead, the medical evidence supports the ALJ's conclusion. ALJ Wilkerson concluded, in part, that Cody failed to display deficits in adaptive functioning, a prerequisite of Listing 12.05. [Tr., p. 17] *See West v. Comm'r SSA*, 240 F. App'x 692, 698 (6th Cir. 2013) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."). The ALJ also acknowledged that the Claimant generally received low grades in school. [Tr, p. 19] However, a review of his certified credit sheet from Simon Kenton High School indicates that, as of July 16, 2008, his class rank was 295 out of 368 and that he had received a number of high grades as well, such as an A- in Masonry,

B+ in U.S. History and Government, and a 94 in Introduction to Art. [Tr., p. 291] The ALJ also recognized that testing revealed the Claimant had an IQ scores below 70. [Tr., pp. 17, 19]

Notwithstanding these findings, the Claimant has never been diagnosed with any form of mental retardation which is "probative" to the 12.05C determination. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x. 533, 539 (6th Cir. 2014). In fact, Cody underwent two psychological consultative examinations, both of which revealed that his intellectual abilities were at the borderline level and that he neither demonstrated mental retardation or any finding of mental disability. And, as the Sixth Circuit has routinely explained, a diagnosis of borderline intellectual functioning is not consistent with a diagnosis of mental retardation. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x. 450, 452 (6th Cir. 2007) ("It is undisputed that no psychologist has diagnosed [the claimant] with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning. Moreover, [the claimant] performed a number of common activities inconsistent with mental retardation, including semiskilled work for a number of years, playing guitar, and riding a motorcycle."); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) ("The conclusions of Dr. Spence that [the claimant] was operating in the borderline range of intelligent functioning, rather than being mentally retarded, are supported by the testimony . . . although her intelligence test scores, standing alone, would indicate mental retardation.").

On June 18, 2009, David Chiappone, Ph.D., performed the first consultative psychological examination of the Claimant to assess his intellectual functioning, memory functioning, reading ability, and current mental status. [Tr., pp. 210-219] Dr. Chiappone noted

that his mental status examination was generally unremarkable despite the Claimant making claims of memory issues and dyslexia. Cody was alert and responsive, was oriented in all spheres, knew his birth date, age, and social security number, was not confused, and was able to follow directions. [Tr., pp. 213-16] Dr. Chiappone indicated that the Claimant had some difficulty with backward tasks and experienced reduced concentration and attention and that test results revealed that he had a ful-scale IQ score of 67. [Tr., p. 215] Nevertheless, he determined that Cody retained the ability to understand and remember simple one or two-step instructions. [Tr., p. 216] Dr. Chiappone ultimately concluded that Cody was operating in borderline intellectual functioning range and had a learning disability not otherwise specified. [Tr., p. 216]

On March 18, 2011, psychologist Kirk Little, Psy.D, performed a second consultative examination of Cody. [Tr., pp. 244-48] Dr. Little reported that the Claimant demonstrated depression in his mode and affect and had some difficulty with calculations. Despite this, Cody was fully oriented to time, person, and place, and in touch with reality. [Tr., p. 246] Dr. Little diagnosed him with ADHD, bipolar II disorder, with recent episode depressed with transient psychotic features at night, as well as borderline intellectual functioning. [Tr., p. 247] Dr. Little found that Cody appeared moderately impaired in his ability to understand, retain, and follow instructions, to sustain attention, and to relate to others and adapt to stress. [Tr., p. 247-48] However, Dr. Little did not restrict Cody from all work activity and he noted that his prognosis is considered to be good with treatment and fair without. He also concluded that Cody would be likely be able to manage his own money. [*Id.*]

As noted above, neither Dr. Chiappone nor Dr. Little diagnosed the Claimant with mental retardation. Moreover, neither doctor found that the he had the necessary deficits in adaptive functioning necessary to satisfy the diagnostic description of Listing 12.05. And, while the Claimant has a history of mental impairments, there is no indication that he would satisfy the diagnostic description of 12.05 or be unable to perform all work, whether the impairments are considered singularly or in combination. Rather, as ALJ Wilkerson pointed out, Cody testified that he thought he would be able to perform a simple job, such as mowing lawns, and that he had previously assisted his mother's boyfriend with his roofing business by cleaning and stocking his tools. [Tr., pp. 17, 36-37] He also testified that he has applied for several jobs but has not been hired. [Tr., pp. 17, 35-36]

Additional medical evidence and treatment records also support the ALJ's findings and demonstrate that Cody did not experience sufficiently significant deficits. For instance, in December 2011 following his consultative examination with Dr. Little, the Claimant began receiving mental treatment for claims of anxiety at NorthKey Community Care. [Tr., pp. 20, 327-339] Although he was diagnosed with anxiety disorder not otherwise specified, the treatment notes describe a conservative treatment record and do not indicate that he was experiencing any serious symptoms that inhibited his ability to function throughout the day. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir 2012) (holding that the ALJ properly relied on the claimant's conservative treatment record in analyzing the claimant's mental health deficiencies). There was no evidence that the Claimant had been prescribed any psychotropics medications or that he was ever psychiatrically hospitalized.

ALJ Wilkerson also properly relied on the opinion evidence of state agency reviewing psychologist Dan Vandiver, Ph.D, finding his opinions consistent with those of Drs. Chiappone and Little, as well as the other evidence of record. [Tr., p. 20-21, 71-80] After reviewing the evidence, Dr. Vandiver completed a medical source statement concerning Cody's functional abilities. He concluded that the Claimant was able to understand and remember simple instructions as well as procedures requiring brief initial learning periods. [Tr., pp. 78-79] Dr. Vandiver stated that the Claimant was able to sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations and doing so at requisite schedules of work and breaks. Cody was able to interact frequently and sufficiently with supervisors and peers as needed for task completion. Dr. Vandiver also noted that Cody should not interact with the public more than occasionally and that he that is able to adequately adapt to situational conditions and changes with reasonable support and structure. [Tr., pp. 77-79]

Dr. Vandiver's opinion is also consistent with the findings of Drs. Chiappone and Little. These doctors all concluded that the Claimant had only moderate limitations in mental functioning required for sustaining work activity. Additionally, none of these doctors found that the Claimant was unable to perform work activity. These opinions are also consistent with the Claimant's NorthKey treatment records and, although the NorthKey treatment notes reflect that the Claimant had some anxiety, no restrictions were ever placed on his ability to work.

Other evidence of record also supports that Cody does not meet the listing for intellectual disabilities. He testified that he has friends in school, including four close friends that he has

been able to maintain close relationships with for over a period of six years. [Tr., p. 245] He was cooperative with and did not have any difficulty interacting with the consultative examiners and was able to communicate effectively and clearly with the ALJ during his hearing. He indicated that he enjoys playing video games and drawing and is able to concentrate long enough to do so, as well as assists with chores around the house such as mowing the lawn and shoveling snow. [Tr., p. 214-15] He enjoys riding his bike, goes for walks with his friends, and in 2009 he reported leaving his house with friends to help care for a friend's grandmother. [Tr., p. 215] Although he does not know how to drive, he is able to use public transportation. [Tr., p. 172, 246] Further, he is able to hygienically care for himself, is able to cook for himself with a microwave and follow recipes and is able to operate a clothes dryer and do laundry. [Tr., p. 215]

Cody unsuccessfully argues that he has established that he meets the requirements of Listing 12.05C because he "has deficits in more than two areas." [Record No. 14, p. 9] He asserts that his ability to perform simple job instructions, maintain concentration and instruction, among other findings noted above, are not necessarily inconsistent with Listing 12.05C. He contends that while the opinions "stated by the [ALJ regarding] adaptive deficits may be supported by substantial evidence, these alone do not preclude [him] from meeting Listing 12.05C." [*Id.*, p. 8] The Claimant argues that ALJ Wilkerson should have further discussed his adaptive functioning more thoroughly in his unfavorable written decision. [*Id.*, pp. 7-9] In support, he cites his academic limitations, impaired social and concentration skills, and that remains at home with his mother.[4] [*Id.*, p. 7] These arguments are misplaced.

---

4       The Claimant makes a passing reference that the ALJ failed to address the opinions of "various school evaluators as set forth in Exhibit 8F." [Record No. 11, p. 8] However, the ALJ did address this

As a matter of course, deficits in functioning do not automatically equate to a finding that Listing 12.05C has been satisfied. Despite evidence supporting that the Claimant has mental limitations resulting from multiple mental impairments, he has failed to put forth evidence that his impairments met or equaled the diagnostic description for mental retardation as outlined by the introductory paragraph of Listing 12.05C. *See Sullivan*, 493 U.S. at 530-32; *Foster,* 279 F.3d at 353; 20 C.F.R. §§ 416.920(a)(4)(iii), (d), 416.925, 416.926. Again, Cody was never diagnosed with mental retardation. The evidence also does not demonstrate that he experienced significant restrictions in adaptive functioning during the developmental period or that he was restricted from all work activity. Rather, as indicated above and outlined in the ALJ's decision, substantial evidence supports the finding that the Claimant did not meet Listing 12.05C. His contention that a more extensive discussion of his deficits is necessary under Listing 12.05C ignores these findings and the substantial medical and opinion evidence of record. Further, even if ALJ could have more thoroughly articulated these findings, any such deficiency would be harmless. *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007).

### B.      Hypothetical & VE's Testimony[5]

Cody takes issue with the hypothetical posed to VE Growick. Although he concedes that he can perform a full range of work at all extertional levels, he disputes the "lack of specificity

---

evidence in his written decision. [Tr., pp. 17, 19] Additionally, the Claimant's failure to articulate how the ALJ's perceived failure to review this evidence possibly constituted error results in waiver of the argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Davis v. Colvin*, No. 6: 13-36-DCR, 2013 U.S. Dist. LEXIS 168494, at *23-27 (E.D. Ky. Nov. 27, 2013).

5      Because Cody's objections regarding the ALJ's hypothetical and the VE's subsequent testimony overlap, they will be addressed together.

[regarding] the non-exertional limitations." [Record No. 11, p. 8] More specifically, he contends that ALJ Wilkerson failed to pose a complete hypothetical question to the VE because he relied on limitations that contained "modifiers" that are not defined by regulation or by the Dictionary of Occupational Titles ("DOT"). [Record No. 11, pp. 8-13] The Claimant identifies these "modifiers" as the ALJ's use of "simple,"[6] "changes in workplace," "routine," "simple instructions," "brief initial learning period," and "off-task more than 10% of time." He asserts that these are all "undefined variables without meaning" and are indicative of disability, not ability. As a result, he argues that the ALJ improperly relied on the VE's testimony because it was premised upon an improper hypothetical question and, therefore, does not constitute substantial evidence. [*Id.*, pp. 12-13] This contention fails.

Contrary to the Claimant's assertions, VE Growick had no difficulty comprehending and responding to the ALJ's hypothetical questions, asking him to assume certain limitations combined with the "modifiers" that the Claimant now protests as improper. Additionally, the

---

6       The Claimant precipitously interjects an assertion that the ALJ failed to "address" the testimony of his grandmother in discussing the ALJ's alleged improper use of the improper modifiers of "simple" and "simple work." [Record No. 11, p. 10] He contends that her testimony was "critical evidence." [*Id.*] This is incorrect.

        Contrary to the Claimant's contention that the ALJ failed to address his grandmother's testimony, ALJ Wilkerson specifically addressed her testimony and concluded that it was inconsistent with other substantial evidence of record. [Tr., p. 16] Moreover, ALJ Wilkerson properly considered all of the Claimant's symptoms, including his issues with concentration and forgetfulness, and his grandmother's testimony was essentially a restatement of these alleged deficits. *See Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014) (holding that ALJ reasonably discounted the testimony of the claimant's father on the basis that it conflicted other substantial evidence of record, including the claimant's daily activities, opinion of evaluating psychologists and psychiatirst that the claimant did not have serious work-related limitations, and the claimant's responses were within normal limits). Further, even if the ALJ did not specifically address his grandmother's testimony, it would not have constituted a reversible error since an ALJ is not required to provide a detailed analysis of each piece of evidence in the record. *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006).

Claimant's attorney made no attempt to clarify or object to the ALJ's use of these modifiers when describing the Claimant's limitations in questioning the VE during the administrative hearing. Further, Cody presents no authority that requires the ALJ to: (i) present hypothetical questions that only use terms defined by regulation or in the DOT; or (ii) further solicit clarification of a VE's testimony when any proposed hypothetical contains a modifier.

Rather, ALJs may properly rely on a VE for his knowledge and expertise. 20 C.F.R. §§ 416.1566(e), 416.960(b)(2); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (noting the value of VEs' experience in job placement and career counseling rather than publications). Moreover, an ALJ has no "affirmative duty . . . to conduct an independent investigation into the testimony." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir 2006). Contrary to the Claimant's position, courts have consistently concluded that there is no requirement to cite the DOT. *See, e.g., Id.*; *Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 554 (6th Cir. 2011) (where there existed a perceived inconsistency between the VE's testimony and the DOT with the claimant's abilities concerning the requirements of a position, the claimant's failure to raise this issue before the ALJ waived any claim and the ALJ had no affirmative duty to investigate the testimony further); *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011) ("Because neither the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications, [the claimant's] argument is without merit."). Thus, Cody's assertion that the ALJ presented a flawed hypothetical to the VE because of his use of these "modifiers" is without merit.

Additionally, the Sixth Circuit has consistently held that a hypothetical question posed to a VE "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster*, 279 F.3d at 356); *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints."). The ALJ is permitted to rely on the VE's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The VE's answers to these questions are substantial evidence "only if the question accurately portrays [a claimant's] individual physical and mental impairments." *Id.*

Here, the VE's testimony was in response to a valid hypothetical which accurately portrayed all the reasonable limitations set forth in Cody's RFC. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). While the Claimant argues that his impairments cause greater limitations than those recognized by the ALJ, objective medical and other evidence supports the ALJ's determinations which were incorporated into the hypothetical questions to the VE. The evidence of record does not support the more restrictive limitations the Claimant claims and ALJ Wilkerson properly did not account for these limitations the hypothetical posed to the VE. *Casey*, 987 F.2d at 1235 ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Thus, the ALJ correctly relied on the VE's testimony and it constituted substantial evidence in support of the conclusion that Cody was not disabled.

## IV.

Although Cody suffers from some impairments, he has not established that he is disabled as defined by the Act.  The ALJ did not err in his evaluation of Cody's case and his decision is supported by substantial evidence.   Accordingly, it is hereby

**ORDERED** as follows:

1.     Plaintiff Raymond Anthony Cody's Motion for Summary Judgment [Record No. 11] is **DENIED**.

2.     Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 14] is **GRANTED**.

3.     The administrative decision of Administrative Law Judge Dwight D. Wilkerson will be **AFFIRMED** by separate Judgment entered this date.

This 25th day of August, 2014.



Signed By:

*Danny C. Reeves*

United States District Judge